**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING DIVISION**

**ROBERT LEE SAUNDERS, JR.,**
*Petitioner,*

v.

**Civil Action No. 5:11-cv-161
Criminal Action No. 5:10-cr-18
(Judge Stamp)**

**UNITED STATES OF AMERICA,**
*Respondent.*

**REPORT AND RECOMMENDATION TO THE DISTRICT JUDGE
RECOMMENDING THAT THE DISTRICT COURT DENY PETITIONER'S MOTION
UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

### I. INTRODUCTION

On November 10, 2011, Petitioner Robert Lee Saunders, Jr. ("Petitioner"), proceeding *pro se*, filed a Motion to Vacate Pursuant to 28 U.S.C. § 2255. (Civil Action No. 5:11-cv-161, Doc. 1; Criminal Action No. 5:10-cr-18, Doc. 203). On November 14, 2011, the Court issued a Notice of Deficient Pleading. (Doc. 205). Petitioner filed his Amended Motion in the court-approved form on December 1, 2011. (Doc. 209).

On February 29, 2012, the undersigned Magistrate Judge entered an Order directing the Respondent, the United States of America ("Respondent" or "government") to answer Petitioner's Motion. (Doc. 212). On March 7, 2012, the government filed a Motion for Extension on Time to File Response (Doc. 214), which the undersigned granted on March 14, 2012. (Doc. 215). The government filed a Response to Petitioner's Motion on April 19, 2012. (Doc. 219).

The undersigned now issues this Report and Recommendation on Petitioner's motion without an evidentiary hearing. For the reasons stated below, the undersigned recommends that the District Judge deny Petitioner's motion to vacate.

## II. STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A. Conviction and Sentence

On April 6, 2010, the Petitioner and three co-defendants were charged by a federal Grand Jury on a thirteen count indictment, ten counts of which named the Petitioner. On July 30, 2010, Petitioner entered a plea of guilty to Count 1 of the Indictment, which charged him with participation in a conspiracy to distribute more than five hundred (500) grams of cocaine and a quantity of marijuana in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B). (Doc. 100 at 1). As part of the plea agreement, Petitioner stipulated that his participation in the conspiracy involved between three and one half (3.5) and five (5) kilograms of cocaine and fifty (50) kilograms of marijuana. (*Id.* at 4).

Following his entered plea of guilty, a Presentence Investigation Report ("PSI") was prepared by direction of the Court by U.S. Probation Officer Daniel Fugate. (Doc. 172). The PSI found a base offense level of 30. (*Id.* at 19). The offense level was increased by two for the defendant's role in the offense, and subsequently reduced three levels for acceptance of responsibility, resulting in an adjusted offense level of 29. (*Id.*) Neither party filed any objections to the report, though the government had previously filed a motion to reduce the Petitioner's offense level one additional level due to his substantial assistance in the investigation of his co-defendants, which the Court granted. (Doc. 171). On November 30, 2010, the Petitioner was sentenced to a term of seventy-eight (78) months incarceration, the lowest sentence within his applicable advisory guideline range of seventy-eight (78) to ninety-seven (97) months. (*Id.*). Throughout these proceedings, the Petitioner was

represented by attorney Kevin Neiswonger, Esq.

## *B. Appeal*

Petitioner did not file a direct appeal of his conviction or sentence.

## *C. Federal Habeas Corpus*

### 1. Petitioner's Motion

In his Court-Approved Motion, Petitioner alleges the following:

1. Defense Counsel was constitutionally ineffective for coaxing Petitioner into accepting a plea offer which differed from the one which Petitioner and defense counsel previously discussed. Petitioner claims he was not given an opportunity to examine the new plea offer, and would not have accepted the plea had he known of its actual terms

2. Defense Counsel was constitutionally ineffective for failure to discuss the PSI with Petitioner prior to the sentencing hearing held on November 30, 2010.

3. Defense Counsel was constitutionally ineffective for failure to request or share with the Petitioner any of the surveillance evidence or witness testimony given before the Grand Jury.

(Doc. 203).

### 2. The Government's Response

In its response, the government asserts as follows:

1. Defense Counsel did not coax Petitioner into entering into a plea agreement that he did not understand. The plea agreement entered in court differed from the plea agreement discussed at Defense Counsel's office only by one paragraph, which was brought to the attention of both the Court and the Defendant at the hearing. The Petitioner acknowledged his understanding of the changed paragraph, and agreed to it. Defense Counsel did not render ineffective assistance by encouraging the Petitioner to accept the amended plea.

2. Defense Counsel did in fact go over the PSI with the Petitioner prior to the imposition of sentence. The Petitioner acknowledged in a sworn statement that Defense Counsel had gone over the PSI with him, and that, while he was displeased with the contents of the PSI, he did not have any objections thereto.

3. Defense Counsel was not constitutionally ineffective for failure to request or show to the Petitioner certain discovery materials, including video and audio evidence, as well as statements by a witness before the Grand Jury. Any error by Defense Counsel in this respect occurred prior to the entry a voluntary guilty plea, and any collateral attack based thereon is therefore waived by the entry of that plea.

4. All grounds for collateral attack asserted by the Petitioner were waived by the voluntary entry of a guilty plea, as none of the Petitioner's claims asserts actual innocence of the charge on which he was convicted.

(Doc. 219).

**3. The Petitioner's Reply**

The Petitioner filed no Reply to the government's Response.

### III.   DISCUSSION

*A. Law Governing Waivers of Direct Appeal and Collateral Attack Rights*

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned." *Blackledge v. Allison*, 431 U.S. 63, 71 (1877). However, the advantages of plea agreements are only secure when "dispositions by guilty plea are accorded a great measure of finality." *Id.* The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has recognized that the Government often secures waivers of both appellate and collateral attack rights "from criminal defendants as part of their plea agreement." *United States v. Lemaster*, 403 F.3d 216, 220 (4th Cir. 2005).

Courts have routinely held that "defendants can waive fundamental constitutional rights such as the right to counsel, or the right to a jury trial." *United States v. Marin*, 961 F.2d 493, 496 (4th Cir. 1992). Specifically, the Fourth Circuit has held that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is 'the result

of a knowing and intelligent decision to forgo the right to appeal.'" *United States v. Attar*, 38 F.3d 727, 731 (4th Cir. 1994) (citations omitted). However, a defendant still retains the right to appellate review on limited grounds, such as when a sentence above the maximum penalty provided by statute is imposed or when a sentence is imposed based on a constitutionally impermissible factor. *Id.* at 732. Furthermore, the *Attar* court recognized that a defendant cannot "fairly be said to have waived his right to appeal his sentence on the ground that the proceedings following entry of the guilty plea were conducted in violation of his Sixth Amendment right to counsel." *Id.*

Eleven years later, the Fourth Circuit determined there was no reason to distinguish between waivers of appellate rights and waivers of collateral attack rights. *Lemaster* at 220 n.2. The Fourth Circuit noted that all courts of appeals to have considered the issue have "held that the right to attack a sentence collaterally may be waived so long as the waiver is knowing and voluntary." *Id.* at 220. The *Lemaster* Court did not address whether the same exceptions that were noted by the *Attar* court apply to a waiver of collateral attack rights, but it did note that it saw "no reason to distinguish" between the two. *Id.* at 220 n.2; *see also United States v. Cannady*, 283 F.3d 641, 645 n.3 (4th Cir. 2000) (collecting cases where the court has determined that waivers of § 2255 rights are generally valid).

The Fourth Circuit has not yet issued a binding decision defining the scope of collateral attack waivers and so has not yet imposed on this Court a standard governing "the extent to which an ineffective assistance of counsel claim can be precluded by a § 2255 waiver." *Braxton*

5

*v. United States*, 358 F. Supp. 2d 497, 502 (W.D. Va. 2005).[1] However, several courts have held that collateral attack waivers should be subjected to the same conditions and exceptions applied to waivers of direct appellate rights. *Cannady* at 645 n.3 (collecting cases). Furthermore, most courts of appeals have determined that waivers of collateral attack rights encompass claims of ineffective assistance of counsel "that do not call into question the validity of the plea or the § 2255 waiver itself, or do not relate directly to the plea agreement or the waiver." *Braxton* at 503.

**B.      *Law Governing the Determination of Whether a Waiver is Knowing and Intelligent***

The Fourth Circuit has held that the determination of whether a waiver of appellate and collateral attack rights is "knowing and intelligent" "depends 'upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused.'" *Attar* at 731 (quoting *United States v. Davis*, 954 F.2d 182, 186 (4th Cir. 1992)). This determination is often made upon reviewing the "adequacy of the plea colloquy" and determining, in particular, "whether the district court questioned the defendant about the appeal waiver." *United States v. Blick*, 408 F.3d 162, 169 (4th Cir. 2005). However, an ultimate decision is "evaluated by reference to the totality of the circumstances." *United States v. General*, 278 F.3d 389, 400 (4th Cir. 2002).

**C.      *Petitioner's Claim of Ineffective Assistance of Counsel***

**1.      Standard Governing Claims of Ineffective Assistance of Counsel**

The Supreme Court has set forth a two-prong test for determining whether a convicted

---

[1]The Fourth Circuit issued an unpublished per curiam opinion affirming the Western District of Virginia's ruling in *Braxton*, which held that "a valid § 2255 waiver preclude[s] petitioner's claim of ineffective assistance which [does] not bear on the validity of the plea or waiver." *Braxton* at 502 (quoting *United States v. Parker*, CR-6-99-54, CA-7-01-491 (W.D.Va. March 31, 2003), aff'd 214 Fed.Appx 271 (4th Cir. 2007).

defendant's claim of ineffective assistance of counsel warrants the reversal of his conviction. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, "the defendant must show that counsel's performance was deficient." *Id.* Second, "the defendant must show that the deficient performance prejudiced the defense." *Id.* These two prongs are commonly referred to as the "performance" and "prejudice" prongs. *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1297 (4th Cir. 1992). In both of these stages of the analysis, the Petitioner bears the burden of proving his allegations by a preponderance of the evidence. *See United States v. Moore*, 1993 WL 179226 (4th. Cir. May 26, 1993); *see also Vanater v. Boles*, 377 F.2d 898, 900 (4th Cir. 1967).

To satisfy the "performance" prong, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland* at 687. However, a reviewing court does not "grade" trial counsel's performance, and there is a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Carter v. Lee*, 283 F.3d 240, 249 (4th Cir. 2002). Essentially, the reviewing court must not "second-guess" counsel's performance and must "evaluate counsel's performance 'from counsel's perspective at the time.'" *Hunt v. Lee*, 291 F.3d 284, 289 (4th Cir. 2002). Furthermore, the standard of reasonableness is objective, not subjective. *See Strickland* at 688.

To satisfy the "prejudice" prong, the defendant must demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. Therefore, if counsel's errors have no effect on the judgment, the conviction should not be reversed. *See id.* at 691. In the context of a guilty plea, a petitioner must demonstrate that there is a reasonable probability that but for his attorney's alleged mistakes, he would not have pled

guilty and instead would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). The Fourth Circuit has recognized that if a defendant "cannot demonstrate the requisite prejudice, a reviewing court need not consider the performance prong." *Fields* at 1297.

**2. Petitioner's claim does not fall within the scope of his collateral attack waiver.**

In his motion, Petitioner asserts that he received ineffective assistance of counsel resulting in his guilty plea not being intelligently, voluntarily, and knowingly entered. (Doc. 209-1, p. 1-2) Specifically, Petitioner alleges he was "coerced by the prosecution and his own attorney to sign a different plea agreement" than the one his attorney had previously gone over with him (*Id.*). As mentioned before, most courts of appeals have determined that waivers of collateral attack rights encompass claims of ineffective assistance of counsel "that do not call into question the validity of the plea or the § 2255 waiver itself, or do not relate directly to the plea agreement or the waiver." *Braxton* at 503. Here, Petitioner's claim calls into question the validity of his plea and relates directly to his plea agreement and waiver. Additionally, in the Rule 11 colloquy, Judge Stamp informed Defendant that his waiver of appellate and collateral attack rights was "subject to certain exceptions, such as ineffective assistance of counsel." (Plea Hrg. Tr. at 14:13-15). Therefore, the undersigned finds that Petitioner's claim does not fall within the scope of his collateral attack waiver.

**3. Petitioner's Claim that the government and defense counsel coerced him into accepting a plea he did not understand is lacking in factual support.**

Petitioner claims that his counsel during plea negotiations rendered ineffective assistance by coaxing him into accepting a plea agreement which he alleges was wholly different from the plea agreement that Petitioner had reviewed at counsel's office. (Doc. 209-1 at 2-3). The

8

Petitioner further claims he was assured by his attorney and by the government that he would serve no more than 5 years incarceration. (*Id.*).

A review of the record shows that the factual scenario surrounding Petitioner's guilty plea is not as he claims. Rather than the complete overhaul suggested by Petitioner, it appears that only one paragraph, the second paragraph of the first page, was altered at the plea hearing. (Plea Hrg. Tr. at 6:24-7:4). This alteration was to correct a typo wherein the applicable sentence was incorrectly listed as 5 years, which was corrected to reflect the actual sentence range of not less than 5 nor more than 40 years. (*Id.*).

Even had Mr. Saunders gone into the plea hearing expecting to receive a sentence of no more than 5 years, it is clear from the hearing transcript that he did not hold this mistaken belief at the time he executed the written plea agreement in court. At the start of the hearing, Mr. Parr, the Assistant U.S. Attorney, made it abundantly clear the correct applicable sentence range.

```
24    MR. PARR:  Thank you, your Honor.  I would indicate
25    that it is a five-page, 17-paragraph plea agreement letter.  I

1     would also note to the Court that we re-executed page one of
2     that plea agreement to correct the mistake that was in
3     paragraph 2, now–and I will get it to.  It will indicate the
4     5-to-40 range rather than just leaving it at five years.
```

(*Id.*). Additionally, after having been informed in open court by the government of this change in the plea agreement, Petitioner himself explicitly acknowledged to the Court his knowing and intelligent agreement to it during Judge Stamp's Rule 11 colloquy.

```
15    THE COURT:  And I understand the first page of the
16    plea agreement has been changed to reflect that there is a
17    mandatory minimum sentence of five years and a maximum of 40
18    years, do you understand that?
```

```
19      THE DEFENDANT:  Yes, sir.
20      THE COURT:  And do you understand and agree with all
21      of the terms and provisions of the plea agreement?
22      THE DEFENDANT:  Yes, sir.
```

(Plea Hrg. Tr. 12:15-22). This exchange definitively shows that the Petitioner was aware that his guilty plea would result in a sentence of no less than 5 nor greater than 40 years. Any claim that Petitioner was coaxed into accepting plea terms he did not understand is completely defused by the verbal exchanges between the Petitioner and the Court.

Petitioner's claim that his defense counsel assured him that he would receive a sentence of not more than 5 years is similarly dealt with in the colloquy.

```
9       THE COURT:  Has anybody promised or predicted to you
10      what the exact sentence is going to be that you are going to
11      receive?
12      THE DEFENDANT:  No, sir.
13      THE COURT:  And do you understand that none of us know
14      what the exact sentence is going to be until we get the
15      presentence report and then analyze it under the Sentencing
16      Guidelines, along with other sentencing factors; do you
17      understand that, sir?
18      THE DEFENDANT:  Yes, sir.
```

(Plea Hrg. Tr. 31:9-18).

Even if, *arguendo*, defense counsel had committed the errors alleged in Petitioner's *pro se* Motion, Petitioner cannot show the requisite prejudice therefrom. *See Hill* at 58-59. Petitioner was aware of the amended contents of the plea agreement, and nonetheless entered a plea of guilty. He therefore cannot be heard to say that he would have insisted on going to trial had he known of the altered term. *See id.* Based on the foregoing, the undersigned finds that Petitioner's claim of ineffective assistance of counsel regarding his argument of personal use quantities is without merit.

**4. Petitioner's claim that counsel was ineffective for failure to adequately discuss the terms of his presentence report with him is lacking in factual basis.**

In his *pro se* Motion, Petitioner claims that his defense counsel was constitutionally ineffective for failing to discuss Petitioner's presentence investigation report with him. (Doc. 209-1 at 3). Petitioner further alleges that, had defense counsel discussed the PSI with him, he would have objected to several items contained therein. (*Id.* at 3-4). However, this assertion after the fact is directly contradicted by Petitioner's sworn testimony at the sentencing hearing. At that time, Mr. Saunders affirmed that his counsel had in fact gone over the PSI with him, and that he did not wish to file any objections to its contents. (*Id.* at 4).

```
8    THE COURT:  All right, Mr. Saunders, have you received
9    that presentence report?  Have you gone over that report with
10   your counsel, Mr. Neiswonger, and did he answer to your
11   satisfaction and any questions you had about the report?
12   THE DEFENDANT:  Uh, yes, sir.  I went over that report
13   with Mr. Neiswonger.  We went over it–like after the report
14   was due back is when I actually went over it with him and, you
15   know, I didn't agree with everything that [probation officer] Mr. Fugate wrote, but
16   Mr. Neiswonger did go over everything with me.
```

(Sen. Hrg. Tr. at 3:8-16). Furthermore, while the Petitioner expressed a distaste with the overall PSI, he indicated that he had no objection to the manner in which it was compiled given the evidence.

```
18   THE COURT: You do not like the result, but do you
19   quarrel–do you have a quarrel with the way the result is
20   reached given the evidence?
21   THE DEFENDANT:  Uh, I have no argument at this time,
22   sir.
23   THE COURT: I'm sorry?
24   I said I have no argument.
```

(*Id.* at 5:18-24). The Petitioner unmistakably stated under oath that Mr. Neiswonger did discuss

the PSI with him, and that, while he was unhappy with it, he did not wish to file any objections to its contents. For the foregoing reasons, the undersigned finds this contention to be without merit.

**5. Petitioner's claim that counsel was ineffective for failure to acquire or show the Petitioner certain discovery items is without merit.**

The Petitioner claims that he "was never given the opportunity to see any videos, never given any opportunity to hear any audio, and never given the opportunity to see or read any statements of anyone who was supposedly a witness before the Grand Jury against the defendant for the duration of the case." (Doc. 209-1 at 3). While neither the Petitioner nor the government have presented any argument as to the factual truth of this assertion, Petitioner has failed to assert how his decision to plea guilty would have been altered in the absence of this alleged error.

When applying the prejudice prong of the *Strickland* test to the plea bargaining process, "a defendant must show the outcome of the plea process would have been different with competent advice." *Missouri v. Frye*, 132 S. Ct. 1399, 1409 (2012). The Petitioner must be able to demonstrate a "reasonable probability that, but for counsel's errors, [the Petitioner] would have would not have pleaded guilty and would have insisted on going to trial." *Lafler v. Cooper*, 132 S. Ct. 1376, 1384-1385 (2012). Additionally, the Supreme Court has previously held that a defendant's entered plea of guilty "renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt." *Menna v. New York*, 423 U.S. 61, 62 (1975).

Not only does the Petitioner not allege that he would not have plead guilty to the offense charged had he been shown the evidence against him firsthand, Petitioner was in fact aware of the contents of that evidence, and still went forward with a guilty plea. The PSI contained a

summation of all the government's evidence against the Petitioner, as well as statements of how, and when, it was collected. (Doc. 172 at 6-9). As earlier noted, at Petitioner's sentencing hearing, he stated under oath that he and his counsel had gone over the PSI, that he understood it, and that he did not have any objections thereto. (Sen. Hrg. Tr., *supra*). Regardless of what the Petitioner's self-serving position may be today, it was his sworn statement at sentencing that his attorney had explained to him, and that he understood, a document containing a summary of the government's evidence against him. Therefore, Petitioner entered a plea of guilty with the full knowledge of what the government believed to be the evidence against him, and cannot be heard to say that he would have insisted on a plea of not guilty had he been provided with that evidence. Petitioner has additionally not made a claim that he did not commit the crime to which he plead guilty, and thus has raised no grounds for reversal based on these alleged discovery failures.

Having stated no claim that he not have pled guilty, but would have instead insisted on going to trial had he had the opportunity to observe the government's evidence against him firsthand, nor having made any claim of actual innocence, Petitioner's claim as to this ground is without merit. Accordingly, the undersigned recommends that this claim be dismissed.

## IV.     RECOMMENDATION

Based upon a review of the record, the undersigned recommends that Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Civil Action No. 5:11-cv-18, Doc. 1; Criminal Action No. 5:10-cr-18, Doc. 209) be **DENIED** and **DISMISSED** from the docket because Petitioner has failed to meet the two prongs of *Strickland* to show ineffective assistance of counsel.

Within **fourteen (14) days** after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia. The Court further directs the Clerk of the Court to mail a copy of this Report and Recommendation to the *pro se* Petitioner Robert Lee Saunders by certified mail, return receipt requested to his last known address as reflected on the docket sheet.

**DATED:** August 5, 2013

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE